<u>**NOT FOR PUBLICATION**</u>



**FILED**
JAMES J. WALDRON, CLERK

**DEC. 21, 2011**

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: <u>s/ Ronnie Plasner,</u> DEPUTY

# UNITED STATES BANKRUPTCY COURT
# DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br>**PHILIP RABINOWITZ,**<br>                Debtor. | Case No.:   10-12538  (DHS)<br><br>Adv. No.:   10-02435  (DHS)<br><br>Judge:    Hon. Donald H. Steckroth |
| **PODVEY MEANOR CATENACCI HILDNER COCOZIELLO & CHATTMAN, P.C.,**<br>                Plaintiff,<br>v.<br>**BENJAMIN STANZIALE, JR. et al.**<br>                Defendants,<br>and<br>**HANK LUWISCH,**<br>        Defendant-Third Party Plaintiff,<br>v.<br>**WHITEHALL DEVELOPMENT, LLC et al.**<br>        Third-Party Defendants. | |

**OPINION**

**APPEARANCES:**

**PODVEY, MEANOR, CATENACCI,**
**HILDNER, COCOZIELLO & CHATTMAN, P.C.**
Robert K. Scheinbaum , Esq.
One Riverfront Plaza, 8th Floor
Newark, New Jersey 07102
*Pro se Plaintiff*

**FORMAN HOLT ELIADES & RAVIN LLC**
Harry M. Gutfleish, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
*Attorneys for Defendant-Chapter 7 Trustee Benjamin Stanziale, Jr.*

**WILENTZ, GOLDMAN & SPITZER, P.A.**
David H. Stein, Esq.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095
*Attorneys for Defendant-Third Party Plaintiff Hank Luwisch*

**ANSELL GRIMM & AARON, P.C.**
James G. Aaron, Esq.
1500 Lawrence Avenue
CN 7807
Ocean, New Jersey 07712
*Attorneys for Defendant Richard Weinstein and Third Party Defendants*
*Whitehall Development, LLC and Whitehall Development at Fort Lee, LLC*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court are three summary judgment motions brought in an adversary proceeding to determine the validity, extent, and priority of two alleged liens: (1) defendant-chapter 7 Trustee Benjamin Stanziale, Jr. ("Trustee") moves for partial summary judgment against defendant-third party plaintiff Hank Luwisch ("Luwisch") seeking declaration that Luwisch's alleged security interest in certain limited liability company interests is invalid and unenforceable as well as denying his request for turnover of funds, (2) Luwisch cross-moves for summary judgment against the Trustee on the above issues and seeks an allowed secured claim in the amount of $879,047.19, and finally (3) plaintiff Podvey, Meanor, Catenacci, Hildner, Cocoziello & Chattman, P.C. ("Podvey") cross-moves for partial summary judgment seeking determination of the validity, priority, and extent of its alleged attorneys' charging lien, pursuant to N.J.S.A. § 2A:13-5.

Chapter 7 Debtor Philip Rabinowitz ("Debtor") and his former partner, Richard Weinstein ("Weinstein"), held interests in various limited liability companies ("LLCs"). The LLCs are governed by nearly identical operating agreements. The claims and cross-claims at issue here represent the aftermath of the Debtor's alleged impermissible dealings with third parties, specifically, the Debtor's attempt to grant a security interest in his interests in the LLCs to Luwisch as well as his alleged unilateral retention of Podvey to perform legal work for certain LLCs. The Trustee and Luwisch offer differing interpretations of both the applicable law and the LLC operating agreements; particularly, whether the Debtor is able to transfer his right to receive distributions on his membership interest without Weinstein's consent. Podvey asserts a statutory attorneys' charging lien for legal work performed in connection with the sale of an LLC. Both Luwisch and the Trustee argue that Podvey does not meet the statutory criteria to establish a charging lien. The relevant facts are not in dispute.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (I). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**PROCEDURAL HISTORY AND STATEMENT OF FACTS**

A.     **The Sale of Towers**

The Debtor and Weinstein are former co-owners and co-members of a limited liability company, Whitehall Development, LLC ("Development"). The Debtor and Weinstein also held interests in Whitehall Development at Fort Lee, LLC ("Fort Lee") and Whitehall Towers, LLC ("Towers"). The ownership structure was as follows: (i) Debtor and Weinstein each owned a 50% membership interest in Development; (ii) Development owned a 100% membership interest in Fort Lee; and (iii) Fort Lee owned a 40% membership in Towers, with the remaining 60%

3

membership interest held by Newco Enterprises, LLC ("Newco"). The management and operations of Development are governed by an operating agreement executed by the Debtor, Weinstein, and Development ("Operating Agreement"). (*See* Certif. of David H. Stein in Supp. of Cross-Mot. for Summ. J. ("Stein Certif."), Ex. G) Fort Lee and Towers are governed by nearly identical agreements.

On June 3, 2009, the Debtor, together with Weinstein and Fort Lee, executed an agreement to convey Fort Lee's 40% membership interest in Towers to Newco for a purchase price of $1.5 million ("Towers Sale"). The terms of the Towers Sale required a $300,000 down payment with the $1.2 million balance payable in semi-annual installments of $200,000 each for a period of three years. Purportedly, the Debtor and Weinstein are each entitled to 50% of the sale proceeds. The Debtor filed his petition for chapter 7 relief on January 29, 2010. On September 7, 2010, the Court entered an Order directing that the remaining installments due on the Towers Sale be paid to the Trustee pending the Court's determination of the rights and interests asserted by the parties to the proceeds.

### B.     The Luwisch Agreement

In December 2006, the Debtor and a business partner, Thomas Taylor, sought financing in the amount of $350,000 from Luwisch. An agreement ("Luwisch Agreement") and note ("Note") were executed by the parties on December 22, 2006. The Luwisch Agreement purports to be a secured loan collateralized by, among other assets, the Debtor's "right, title and interest in and to any and all distributions of net cash flow, capital proceeds or any other payments of a kind owing from [Development], [Fort Lee], or [Towers] . . . ."[1]  (Stein Certif., Ex. A at p. 4) Weinstein did not consent to the transfer in writing. Luwisch filed a UCC-1 financing statement, dated January 8, 2007, indicating the following as collateral: "[a]ll of [Debtor's] right, title and interest in [Development], [Fort Lee], and [Towers], and [Debtor's] right to receive payments of any kind therefrom, together with replacements, products and proceeds." (*See* Stein Certif., Ex. B)

The Note matured on January 1, 2009, but the Debtor failed to pay the amount due. In or about February 2009, Luwisch brought suit against the Debtor and Taylor in New Jersey Superior Court asserting a breach of contract claims against the Debtor and Taylor. The Debtor did not answer or otherwise move in the case and Luwisch filed a motion to enter default. In response, the Debtor's former counsel, Martin Fishman, appeared on behalf of both the Debtor and Taylor and filed a certification in opposition to the entry of judgment. (Stein Certif., Ex. H)

---

[1] The Luwisch Agreement also contains a provision titled "Grant of Security Interest" that provides: "[a]s security for the Loan and all of [Debtor's] and Taylor's obligations, [Debtor] and Taylor hereby grant, give and assign to Luwisch a security interest in all their right, title and interest in and to [Development], [Fort Lee], and [Towers], and any and all right to receive payments therefrom, together with replacements, products and proceeds thereof." (Stein Certif., Ex. A at p. 5)

The certification did not assert defenses on the Debtor's behalf, but only admitted the existence of a valid debt obligation and argued that Taylor was only liable for 20% of any judgment per the terms of the Note.  (*Id*. at Ex. H ¶ 3)

On June 16, 2009, the New Jersey Superior Court entered a Final Judgment against the Debtor in the amount of $380,111.21.[2]  The judgment states:

> IT IS ORDERED that the terms and conditions of the [Luwisch Agreement] remain in full force and effect including but not limited to [Debtor's] obligation to transfer certain limited liability company interests to [Luwisch], assign and pledge a beneficial interest in a certain limited liability company to [Luwisch], permit inspection of [Debtor's] books of accounts which reflect fully and accurately all transactions of certain limited liability companies, report on all material occurrences concerning these entities in no event less frequently than quarterly, and respond to inquiries regarding those entities.

(Stein Certif., Ex. J)

### C.    Podvey Charging Lien

Podvey alleges to have represented Fort Lee since June 2005.  In addition to providing the Debtor and Fort Lee with legal advice, Podvey alleges to have engaged in substantial pre-sale communications and negotiations with Newco regarding the Towers Sale. (Podvey's 56.1 Stmt. of Material Facts, ¶¶ 22-23)  At times, Podvey threatened to litigate certain on-going disputes between the parties, but no action was brought.  Attorneys' fees and costs in connection with those services totaled $40,534.82 as of August 2008.  (*Id*. at ¶ 24)

## DISCUSSION

### I.    Summary Judgment Standard

A court may grant summary judgment under Federal Rule of Civil Procedure 56(c), made applicable to adversary proceedings pursuant to Federal Rule of Bankruptcy Procedure 7056, "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Id.*  At the summary judgment stage, the role of the court "is not to weigh evidence, but to determine whether there is a genuine issue for trial." *Knauss v. Dwek*, 289 F. Supp. 2d 546, 549 (D.N.J. 2003) (citing *Anderson v. Liberty*

---

[2] The amount constitutes 80% of the total award of $474,389.01 (Stein Certif., Ex. J)

*Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The court must construe facts and inferences in a light most favorable to the non-moving party.  *See Am. Marine Rail NJ, LLC v. City of Bayonne*, 289 F. Supp. 2d 569, 578 (D.N.J. 2003) (citing *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587-88 (1986)).  "Only evidence admissible at trial may be used to test a summary judgment motion.  Thus, evidence whose foundation is deficient must be excluded from consideration."  *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 471 (3d Cir. 1989) (citations omitted).

The moving party must make an initial showing that there is no genuine issue of material fact.  *See Knauss*, 289 F. Supp. 2d at 549 (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  The burden then shifts to the non-moving party to "'make a showing sufficient to establish the existence of [every] element essential to the party's case, and on which that party will bear the burden of proof at trial.'"  *Cardenas v. Massey*, 269 F.3d 251, 254-55 (3d Cir. 2001) (questioned on other grounds) (quoting *Celotex Corp.*, 477 U.S. at 322).  The "mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact."  *Anderson*, 477 U.S. at 247-48 (emphasis in original).  An issue of fact is "genuine" if a reasonable juror could return a verdict for the non-moving party.  *See id.* at 248.  Furthermore, a material fact is determined by the substantive law at issue.  *See Crane v. Yurick*, 287 F. Supp. 2d 553, 556 (D.N.J. 2003) (citing *Anderson*, 477 U.S. at 248).  A fact is "material" if it might affect the outcome of the suit under governing law.  *Id.*  Disputes over irrelevant or unnecessary facts are insufficient to defeat a motion for summary judgment.  *Anderson*, 477 U.S. at 248 (citation omitted).

However, even if material facts remain disputed, summary judgment may be proper if, after all inferences are drawn in the non-moving party's favor, the moving party is entitled to judgment as a matter of law.  *Id.* at 248-50.  Such a judgment is appropriate "as a matter of law" when the non-moving party has failed to make an adequate showing on an essential element of his or her case, as to which he or she has the burden of proof.  *See Celotex Corp.*, 477 U.S. at 322-23.  When one party moves the court for summary judgment, Federal Rules of Civil Procedure 54(c) and 56, taken together, permit the court to enter summary judgment on behalf of the non-movant, even if the non-movant has not filed a cross-motion for summary judgment.  *See Peiffer v. Lebanon Sch. Dist.*, 673 F. Supp. 147, 151-52 (M.D. Pa. 1987) (citation omitted).  On the other hand, a court must deny a motion for summary judgment when a genuine issue of material fact remains to be tried, or where the moving party is not entitled to a judgment as a matter of law.

## II.     Luwisch's Security Interest

The primary dispute between the Trustee and Luwisch concerns the validity of an alleged security interest granted in the Debtor's right to receive distributions from his LLC membership interests.  The Trustee argues that neither New Jersey law nor the Operating Agreement permits the segmentation of a membership interest into economic rights and governance rights.  Conversely, Luwisch argues economic rights are distinct from governance rights and separately

transferrable.  Importantly, Luwisch holds a state court judgment against the Debtor that purports to ratify the Luwisch Agreement and validate his security interest.  As a result, Luwisch argues, the Court is bound by full faith and credit to bar the Trustee's claim pursuant to New Jersey's entire controversy doctrine.

### A.     Entire Controversy Doctrine

Under the Full Faith and Credit Act, 28 U.S.C. § 1738, the Court is bound to award a state court judgment "the same preclusive effect in federal court [it] would be given in [] courts of the rendering state."  *Del. River Port Auth. v. FOP, Penn-Jersey Lodge 30*, 290 F.3d 567, 573 (3d Cir. 2002).  Accordingly, the law of New Jersey must be applied to determine whether preclusive effect will inure to the benefit of Luwisch.  *Marrese v. Am. Acad. of Orthopedic Surgeons*, 470 U.S. 373, 379 (1985).  Unlike collateral estoppel, New Jersey's entire controversy doctrine is "fully applicable to default judgments."  *Hawkins v. Hawkins (In re Hawkins)*, 231 B.R. 222, 232 (D.N.J. 1999).  The entire controversy doctrine is set forth in New Jersey Court Rule 4:30A and provides the following:

> Non-joinder of claims required to be joined by the entire controversy doctrine shall result in the preclusion of the omitted claims to the extent required by the entire controversy doctrine, except as otherwise provided[.]

N.J. Ct. R. 4:30A.

The entire controversy doctrine is equitable in nature.  "[I]ts purpose[] [is] to encourage comprehensive and conclusive litigation determinations, avoid fragmentation of litigation, and promote party fairness and judicial efficiency."  *Id*. at comment 1.  In furtherance of this purpose, the doctrine "requires that a party litigate all aspects of a controversy in a single legal proceeding" or risk forfeiture of potential claims.  *Mori v. Hartz Mountain Dev. Corp.*, 193 N.J. Super. 47, 52 (App. Div. 1983) (citations omitted); *see Sakhrani v. Washington Mutual Bank, F.A.*, 2006 U.S. Dist. Lexis 49453 at *8 (D.N.J. July 19, 2006) ("all claims against all parties relating to the same controversy or subject matter should be asserted in a single litigation or . . . be forever barred and precluded in the future").  The principal objective then, is the determination of the scope of the particular legal controversy before the Court.

In determining whether a claim is constituent of the larger controversy, "it is the core set of facts that . . . triggers the requirement that they be determined in one proceeding." *DiTrolio v. Antiles*, 142 N.J. 253, 267-68 (1995).  A court may consider a claim part of a controversy if "the parties have a significant interest in the disposition of a particular claim, one that may materially affect or be materially affected by the disposition of that claim."  *Id*. at 268.  *DiTrolio*, endorsing *O'Shea v. Amoco Oil Co.*, 886 F.2d 584 (3d Cir. 1989), held that a claim is related to a controversy when after judgment is entered, the parties would likely "engage in additional litigation to conclusively dispose of their respective bundles of rights and liabilities that derive from a single transaction or related series of transactions[.]"  *DiTrolio*, 142 N.J. at 268.  Thus,

7

the doctrine's reach is greater than the "same cause of action requirement of traditional *res judicata* claim preclusion." *Murray v. Crystex Composites LLC*, 618 F.Supp. 2d 352, 357 (D.N.J. 2009) (internal quotation marks omitted). Nevertheless, the doctrine is flexible, calling for case-by-case determination as equitable considerations drive the Court's analysis. *See Murray*, 618 F.Supp. 2d at 358. The "ultimate goal [is] judicial fairness." *Mocci v. Carr Eng'g Assocs., P.A.*, 306 N.J. Super. 302, 306-7 (App. Div. 1997) (citations omitted). Clearly, the doctrine "does not apply to bar [] claims that are unknown, unarisen, or unaccrued at the time of the original action." *Id.*

Here, Luwisch filed suit in state court alleging a claim for breach of contract against the Debtor. (Stein Certif., Ex. G at ¶¶ 16-18) The complaint recites facts concerning the execution and obligations relating to the Luwisch Agreement, including that "[Debtor] [is] required to transfer to Luwisch certain limited liability company interests and the assignment and pledge to Luwisch of a beneficial interest in a certain limited liability company[.]" (*Id.* at ¶ 4) In addition, the Luwisch Agreement was annexed to the complaint and thus, was available for the court's consideration in the state proceeding. *Bridgeton v. Fid. & Deposit Co.*, 88 N.J.L. 645, 647 (E. & A. 1916) ("in pleading any document, a copy may be annexed to the pleading and referred to therein with like effect as if recited at length"). The allegations before the state court were not complex; rather, they illustrate a standard secured transaction whereby financing was supplied in exchange for a payment obligation secured by certain property interests held by the borrower.

The entire controversy doctrine requires "a defendant must assert all matters which will defeat a claim against him . . . ." *Mori*, 193 N.J. Super. at 53. Here, the Debtor made no attempt to answer or otherwise defend until his former attorney filed a certification in opposition to entry of judgment. Notably, the certification did not object to entry of judgment, but rather requested the state court apportion any judgment entered against the Debtor and Taylor in accordance with the terms of the Note. In addition, the Debtor declined to "to delay this matter with hyper technical defenses" as "it was determined that it would be improper, a waste of the [c]ourt's time and [would] improperly add to the expense of this action[.]" [3] (Stein Certif., Ex. H at ¶ 3) Though the Luwisch Agreement was never actually litigated in the proceeding, the entire controversy doctrine applies "to all aspects of a controversy that *might* have been [] litigated and determined." *Mori*, 193 N.J. Super. at 53.

The locus of the state action was the Luwisch Agreement and the parties' respective rights and liabilities thereunder. It seems reasonable that, in a contract dispute, questions concerning the validity and enforceability of the contract's material provisions "are aspects of [the] larger controversy because they arise from interrelated facts." *DiTrolio*, 142 N.J. at 271. The enforceability of a security interest is the fundamental component of any secured

---

[3] According to the certification, counsel for Luwisch and the Debtor engaged in settlement negotiations though a settlement was never reached. Nevertheless, the Debtor chose to "save costs, time and effort, [by not] interposing an answer," provided the judgment was apportioned consistent with the Note. (Stein Certif., Ex. H at ¶¶ 3, 6)

transaction. The validity of Luwisch's security interest in the various membership interests normally would have been determined in the course of litigation. The validity of the security interest was of particular importance given that the Towers Sale occurred during the pendency of the state action. Had Luwisch known of the sale, he could have sought to enforce the security provision in satisfaction of the debt.[4] Clearly, the validity of the security interest was a "potential component of [the] particular controversy," which, if omitted, would likely require additional litigation in order to conclusively dispose of the parties' rights and liabilities deriving from the transaction. *Wm. Blanchard Co. v. Beach Concrete Co., Inc.*, 150 N.J. Super. 277, 293-94 (App. Div. 1977). Though Luwisch's breach of contract claim relied primarily on the Debtor's failure to perform under other provisions of the agreement, "it is the *commonality of facts*, rather than the commonality of issues, parties or remedies that defines the scope of the controversy . . . ." *DiTriolio*, 142 N.J. at 272 (emphasis added). Thus, the validity of the security interest falls within the scope of the entire controversy doctrine under the facts herein.

Full faith and credit commands the Court to give effect to the terms of the state court judgment. The state court judgment dictates "that the terms and conditions of the [Luwisch Agreement] remain in full force and effect including but not limited to [Debtor's] obligation to transfer certain limited liability company interests to [Luwisch], assign and pledge a beneficial interest in a certain limited liability company to [Luwisch][.]" (Stein Certif., Ex. J) State court judgments are not entered blindly without consideration of their legal import. The state court record includes the facts alleged in the complaint and the terms of the Luwisch Agreement that clearly assert a security interest in the Debtor's economic rights in the LLCs. (*See* Stein Certif., Ex. A at p. 4; *see also* State Court Complaint, ¶ 4, Ex. A) Though the entire controversy doctrine does not require an analysis of the merits of a barred claim, the Court must "consider fairness to the parties, as the polestar of the application of the rule is judicial fairness." *Oliver v. Ambrose*, 152 N.J. 383, 395 (1998). If, as the Trustee contends, a member cannot pledge his or her right to distributions from an LLC as security under New Jersey law, the doctrine cannot fairly bar the Trustee from pursuit of its claim. Consequently, the Court will examine the legal feasibility of transferring an interest in the economic aspect of an LLC membership interest as well as whether the Trustee should be bound by the state court determination.

### 1. Transferability of Economic Rights

Pursuant to New Jersey's Limited Liability Company Act, N.J.S.A. 42:2B-1 *et seq.* ("LLC Act" or the "Act"), a limited liability company interest means "a member's share of the

---

[4] Under these circumstances, the Debtor's last minute "opposition" and decision to forgo litigation smack of strategy. Such facts militate in favor of Luwisch and the application of the entire controversy doctrine. *See Wm. Blanchard Co.*, 150 N.J. Super. at 292-93 (a party who elects to hold back from the first proceeding a related component of the controversy is barred from raising it in a subsequent proceeding); *see also Fornarotto v. American Waterworks Co.*, 144 F.3d 276, 284 (3d Cir. 1998) (use of tactics is relevant to fairness under the entire controversy doctrine); *Allstate New Jersey Ins. Co. v. Cherry Hill Pain & Rehab. Institute*, 389 N.J. Super. 130, 140 (App. Div. 2006) (claims barred because party strategically withheld claims in prior litigation).

profits and losses of a[n] [LLC] and a member's right to receive distributions of the [LLC's] assets." N.J. Stat. Ann. § 42:2B-2. Under the Act, such an interest constitutes personal property belonging to the member even though the member "has no interest in specific [LLC] property." N.J. Stat. Ann. § 42:2B-43. The LLC Act allows a member to transfer his or her interest, in whole or in part, except as provided for in an operating agreement. *See* N.J. Stat. Ann. § 42:2B-44(a). The terms of the LLC Act operate as default rules that "control unless the members agree otherwise in an operating agreement." *Kuhn v. Tumminelli*, 366 N.J. Super. 431, 440 (App. Div. 2004). Pursuant to N.J.S.A. 42:2B-66(a), the Act is "liberally construed to give the maximum effect to the principle of freedom of contract and to the enforceability of operating agreements."

Here, the parties dispute whether under the LLC Act, the Debtor's membership interest is comprised of both economic and management rights. Specifically at issue is whether the Debtor is permitted to transfer an interest in the economic rights of a membership interest per the terms of the Act and/or Operating Agreement. The Court finds that both the LLC Act and the Operating Agreement recognize a distinction between economic and noneconomic rights in a membership interest. A plain reading of N.J.S.A. 42:2B-44, which governs the assignability of membership interests, invites the conclusion that a membership interest is composed of both economic and non-economic or governance rights. The provision provides that, unless otherwise agreed, "[a]n assignment [of an LLC interest] entitles the assignee to receive . . . *the allocation of income* . . . to which the assignor was entitled, to the extent assigned." N.J. Stat. Ann. § 42:2B-44(b)(1) (emphasis added). However, the statute states that "[t]he assignee of a [membership interest] shall have *no right to participate in the management* of the business and affairs of a[n] [LLC] . . . ." N.J. Stat. Ann. § 42:2B-44(a) (emphasis added). Finally, "[t]he pledge of, or grant[] of a security interest . . . against, any or all of the [LLC] interest of a member shall not cause the member to cease to be a member . . . or to fail to have the power to exercise any rights or powers of a member." N.J. Stat. Ann. § 42:2B-44(b)(3). Though not expressly stated, the distinction is implicit.

New Jersey's state courts have not confronted the issue.[5] However, other jurisdictions with LLC statutes similar to the provisions relevant here recognize a distinction between economic and non-economic rights in a membership interest. *See Greenstreet Fin., L.P. v. CS-Graces, LLC*, 2011 U.S. Dist. Lexis 44919, at *31-33 (S.D.N.Y. Apr. 18, 2011) (under New York law, one may use the economic interest of an LLC membership interest as security); *see*

---

[5] Both parties cite *W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989*, 2009 U.S. Dist. Lexis 17940 (D.N.J. Mar. 9, 2009) in support of their respective arguments. The Trustee argues that, under *W.R. Huff*, a valid transfer is a prerequisite to reaching provisions governing the effect of that transfer. While Luwisch notes that the court refused to disallow a testamentary transfer of a partnership interest, despite language in the operating agreement apparently prohibiting such transfers. Both propositions are essentially correct. However, in deciding the case the court "exercise[d] its powers in equity"; given the complexity of the underlying facts and agreements in *W.R. Huff*, the Court does not find its holding or analysis entirely instructive. More importantly, the transfer in *W.R. Huff* was an outright assignment rather than the grant of a security interest. Accordingly, the *W.R. Huff* court exclusively applied contract law as Article 9 of the Uniform Commercial Code could not apply. Thus, *W.R. Huff* provides limited guidance on the issues discussed here.

*also In re Ellis*, 2011 Bankr. Lexis 4169 at *3 (Bankr. S.D. Ind. Oct. 27, 2011) (a member of an LLC possesses non-economic rights to manage as well as economic rights to receive distributions); *Spain v. Williams (In re Williams)*, 455 B.R. 485, 502 (Bankr. E.D. Va. 2011) (economic rights in a membership agreement become part of a debtor's estate); *W.R. Huff Asset Mgmt. Co., L.L.C. v. William Soroka 1989*, 2009 U.S. Dist. Lexis 17940 at *64 (D.N.J. Mar. 9, 2009) (citing *Zokaites v. Pittsburgh Ir. Pubs, LLC*, 2008 P.A. Super. 281 at *P5 (Pa. Super. Ct. 2008) (plain reading of provision similar to N.J.S.A. 42:2B-44 demonstrates that a membership interest encompasses both economic rights – which are transferrable – and governance rights – which are not transferrable)); *Lusk v. Elliott*, 1999 Del. Ch. Lexis 172 at *15 (Del. Ch. Aug. 13, 1999) (default rule: assignment of membership interest operates to convey only a limited liability company interest or "financial interest" in the member's dividend distributions and any future sale proceeds). At the very least, the simple fact that an interest is deemed personal property allows a member to dissect and transfer the interest according to his desire, to the extent allowed by law.

The provisions of the LLC Act, however, apply only in the absence of contrary terms in an LLC operating agreement. In the instant matter, the Operating Agreement contains a section governing the transfer of membership interests. The Operating Agreement does not adopt the term "limited liability company interest" or its statutory definition. Instead, the Operating Agreement employs the term Membership Interest, which is defined contextually and presumptively includes both economic and governance rights. *See* Operating Agreement § 2.1. Section 7.2(c) of the Operating Agreement is analogous to N.J.S.A. 42:2B-44(a) and provides that "[a]ny [t]ransferee of a Membership Interest in the Company who is not admitted . . . as a substitute Member . . . shall only be entitled to receive, to the extent transferred, the distributions to which the transferor Member would be entitled, but shall have no right to participate in the management . . . of the Company . . . ." Section 7.2(d) goes on to say that "a Member may sell, transfer, assign or otherwise dispose of all or any portion of his interest in the Company or any distributions therefrom." The plain language of the Agreement is consistent with the proposition that a membership interest is comprised of both economic and governance rights. The Court finds nothing in the Operating Agreement that could be construed to prohibit the severability of a membership interest nor does it reclassify such interest so that it is not the personal property of the member. Nevertheless, the Trustee argues that section 7.2(a) of the Operating agreement voids any transfer made without the written consent of the LLC's non-transferring members.[6]

Under New Jersey law, restrictions on transfers and assignment are subject to attack on several grounds. For example, pursuant to N.J.S.A. 12A:9-406(d), "a term in an agreement between an account debtor and an assignor . . . is ineffective to the extent that it[] prohibits, restricts, or requires the consent of the account debtor . . . [to] the creation, attachment,

---

[6] Section 7.2(a) of the Operating Agreement states that, without prior written consent of the required majority, a member may not "sell, transfer, assign or otherwise dispose of, or permit, voluntarily or involuntarily, any security interest, pledge . . . or restriction of any kind . . . upon, all or any portion of such [m]ember's [m]embership [i]nterest . . . [a]ny such . . . disposition . . . shall be void . . . ."

11

perfection, or enforcement of a security interest . . . ."[7] Under this subsection, "a court may conclude that a covenant with no business purpose other than imposing an impediment to an assignment . . . is rendered ineffective by subsection." N.J. Stat. Ann. § 12A:9-406(d) comment 5. Similarly, the New Jersey common law provides that a "contractual provision that prohibits the assignment of rights under a contract may be disregarded when it is not the main purpose of the contract." *Owen v. CNA Ins./Continental Cas. Co.*, 167 N.J. 450, 458 (2001).

### 2. Privity

As a final note, the entire controversy doctrine extends to all those in privity with the parties involved in the preceding litigation. *Wisniewski v. Travelers Cas. & Sur. Co.*, 390 Fed. Appx. 153, 156 (3d Cir. 2010). The Trustee cites *In re Good Time Charley's, Inc.*, 54 B.R. 157 (Bankr. D.N.J. 1984) for the proposition that a bankruptcy trustee and a debtor are not in privity. *Id*. at 160. However, the trustee in *Good Times* brought fraudulent conveyance actions that "would not have been of any help to [the debtor] in the prior proceeding." *Id*. Here, the Trustee's claim is based, in part, on state law; specifically, the validity of Luwisch's security interest pursuant to N.J.S.A. 12A:9-203(a) and (b).[8] As discussed, the Debtor was able to challenge the validity of Luwisch's interest in the state court proceeding. Unlike *Good Time Charley's*, doing so would have benefited the Debtor by potentially un-encumbering substantial assets. Additionally, the Trustee relies on *In re Popular Club Plan, Inc.*, 395 B.R. 587 (Bankr. D.N.J. 2008) to argue that the entire controversy doctrine does not apply to actions brought under chapter 5 of the Bankruptcy Code. *Id*. at 593. That case, however, contains no such categorical exclusion. The court simply stated that the doctrine did not apply as "the instant case is not a descendent of a state court proceeding, nor has a state court judgment been issued." *Id*.

Despite arguments to the contrary, a trustee in bankruptcy may be "the privy of a prebankruptcy debtor" for purposes of preclusion. *See In re Montgomery Ward, LLC*, 634 F.3d 732, 737-38 (3d Cir. 2011) (trustee may be a privy of debtor for purposes of *res judicata*); *see Sender v. Simon*, 84 F.3d 1299 (10th Cir. 1996) (trustee takes subject to all valid claims and liens which might have been asserted against a debtor and can take no greater rights than a debtor has). "Privity between parties can exist if the interests of the party against whom claim preclusion is asserted were represented in prior litigation." *In re WorldCom, Inc.*, 401 B.R. 637, 650 (Bankr. S.D.N.Y. 2009) (internal quotation marks omitted). Privity can exist where there is

---

[7] An LLC membership interest fits within the U.C.C.'s definition of a general intangible. General intangible "means any personal property, including things in action, other than accounts, chattel paper, commercial tort claims, deposit accounts, documents, goods, instruments, investment property, letter-of-credit rights, letters of credit, money, and oil, gas, or other minerals before extraction." N.J. Stat. Ann. § 12A:9-102(42); *see Greenstreet Fin., L.P. v. CS-Graces, LLC*, 2011 U.S. Dist. Lexis 44919. An 'account debtor' is one who is obligated on an account, chattel paper, or general intangible. N.J. Stat. Ann. § 12A:9-102(a)(3). As a signatory to the Operating Agreement, Development may be obligated to make distributions to its members.

[8] Section 12A:9-203(a) and (b) concern attachment and enforceability of a security interest, respectively, and are briefly discussed below.

substantial identity between the incentives of the earlier party and those of the party whom preclusion is asserted against. *See Id*. Here, the remedy sought by the Trustee is more or less equivalent to the remedy forgone by the Debtor at the state level: to remove a potential lien from his (and now, the estate's) assets. To the extent the Trustee's claim is based on state law, rather than a provision peculiar to bankruptcy law, the Court finds the interests of the Trustee and the Debtor are not disparate to avoid preclusion here.

In the end, application of the entire controversy doctrine is "left to judicial discretion based on the factual circumstances of individual cases." *Brennan v. Orban*, 145 N.J. 282, 291 (1996). Luwisch brought an action at the state level to enforce his rights under the Luwisch Agreement. The agreement provides Luwisch a security interest in the Debtor's right to distributions from the LLC membership interests. The Debtor, in the midst of a sale certain to generate substantial distributions on those interests, not only failed to assert any defense, but expressly declined to waste the court's time by asserting his rights. *See Gelber v. Zito P'ship*, 147 N.J. 561, 565 (1997) (barred party had fair and reasonable opportunity to fully litigate the claim in the original action). The entire controversy doctrine precludes the Debtor's future claims based on common facts, should he later decide it would be worth the time and effort to litigate the Luwisch Agreement. *See Mori*, 193 N.J. Super. at 56 (default judgment given preclusive effect under the doctrine where party "with full knowledge of the earlier litigation, withheld his legal fire"). To allow the Debtor an opportunity to litigate the issue at his convenience would be grossly unfair. Accordingly, the Court finds no compelling reason why the Trustee should not be barred. Thus, summary judgment is granted in favor of Luwisch on Counts One and Two of the Trustee's cross-claims against Luwisch and Count One of Luwisch's cross-claim against the Trustee.

      C.      **Section 544: Lien Avoidance**

Though the entire controversy doctrine bars consideration of the validity of the security interest under state law, it does not fully resolve the Trustee's claim to the extent it seeks avoidance of the interest pursuant to section 544 of the Bankruptcy Code. Under New Jersey law, "[a] security interest . . . is subordinate to the rights of . . . a person that becomes a lien creditor before the earlier of the time: (A) the security interest . . . is perfected; or (B) one of the conditions specified in 12A:9-203(b)(3) is met and a financing statement covering the collateral is filed." N.J. Stat. Ann. § 12A:9-317(a)(2). Section 544 of the Bankruptcy Code "confers upon the trustee the rights of a hypothetical judgment lien creditor," as of the commencement of the case. *Midlantic Nat'l Bank v. Bridge (In re Bridge)*, 18 F.3d 195, 199 (3d Cir. 1994). Thus, a security interest unperfected on the petition date may be subject to avoidance by the Trustee. *In re BRI Corp.*, 88 B.R. 71, 74 (Bankr. E.D. Pa. 1988). To escape the Trustee's section 544 avoidance powers, Luwisch's interest must have been perfected as of the commencement of the Debtor's bankruptcy case.

Pursuant to N.J.S.A. 42:2B-43, a membership interest in an LLC is personal property. *See Prader v. Science Dynamics Corp.*, 2000 U.S. Dist. Lexis 18666 (D.N.J. Dec. 19, 2000) (N.J.S.A. 42:2B-43 directs that an LLC interest is personal property). Thus, the grant of a

security interest in a membership interest is governed by Article 9 of the Uniform Commercial Code, as adopted in New Jersey. *See* N.J. Stat. Ann. § 12A:9-109(a)(1) (the chapter applies to a transaction, regardless of form, that creates a security interest in personal property by contract). As mentioned, a membership interest in an LLC is a general intangible. In New Jersey, "a security interest in general intangibles may only be perfected by filing." *Lloyds Credit Corp. v. McClain Heller Ins.*, 262 N.J. Super. 211, 214 (Law Div. 1992). There is no genuine dispute as to attachment, per the terms of the state judgment.[9] All that remains to immunize Luwisch's security from the Trustee is the timely filling of a financing statement. The record clearly shows that Luwisch filed a UCC-1 financing statement on January 8, 2007, perfecting his interest nearly three years before the Debtor's bankruptcy petition. (Stein Certif., Ex. B) Thus, the Trustee's claim to avoid the security interest under 11 U.S.C. § 544 is denied.

### III.  Podvey's Charging Lien

Common law has long provided attorneys with a charging lien to secure payment for services performed in connection with a suit or cause of action, whenever such action resulted in a judgment in the client's favor. *See Visconti v. M.E.M. Machinery Corp.*, 7 N.J. Super. 271, 275 (App. Div. 1950). New Jersey has codified and expanded the attorneys' charging lien pursuant to N.J.S.A. 2A:13-5. The statute reads as follows:

> After the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim, the attorney or counsellor at law, who shall appear in the cause for the party instituting the action or maintaining the third-party claim or counterclaim or cross-claim, shall have a lien for compensation, upon his client's action, cause of action, claim or counterclaim or cross-claim, which shall contain and attach to a verdict, report, decision, award, judgment or final order in his client's favor, and the proceeds thereof in whose hands they may come. The lien shall not be affected by any settlement between the parties before or after judgment or final order, nor by the entry of satisfaction or cancellation of a judgment on the record. The court in which the action or other proceeding is pending, upon the petition of the attorney or counsellor at law, may determine and enforce the lien.

N.J. Stat. Ann. § 2A:13-5.

---

[9] N.J.S.A. 12A:9-203(a) dictates that a security interest attaches when it is enforceable against a debtor pursuant to N.J.S.A. 12A:9-203(b). Under these facts, section 12A:9-203(b) requires that (1) the creditor give value – Luwisch loaned the Debtor $350,000; (2) the debtor has rights in the collateral – the right to distributions is the Debtor's personal property; and (3) the debtor authenticates a security agreement describing the collateral – the Luwisch Agreement.

"[R]ooted in equitable considerations," the statutory lien supplies attorneys with a protective remedy against clients who may not pay for services rendered. *Martin v. Martin*, 335 N.J. Super. 212, 222 (App. Div. 2000); *see Levine v. Levine*, 381 N.J. Super. 1, 11-12 (App. Div. 2005). The lien, however, cannot be imposed in every instance that an attorney provides professional services; its limitations are unambiguously defined by the terms of the statute. In the absence of uncertainty, courts will consider only a statute's plain meaning. *Nat'l Waste Recycling, Inc. v. Middlesex County Improvement Auth.*, 150 N.J. 209, 223 (1997). As a threshold matter, the statute requires "the filing of a complaint or third-party complaint or the service of a pleading containing a counterclaim or cross-claim . . . ." N.J. Stat. Ann. § 2A:13-5; *see Panarello v. Panarello*, 245 N.J. Super. 318, 322 (Ch. Div. 1990) ("N.J.S.A. 2A:13-5 was designed to protect an attorney's fee *after commencement* of a cause of action, counter-claim, cross-claim, third-party claim or other claim") (emphasis added); *see also Martin*, 335 N.J. Super. at 223 ("[t]he statute itself creates a right to a lien upon the action, claim, etc. That lien can only attach to a judgment, order, or other final disposition"). Nothing in the statute contemplates the imposition of a lien outside the context of an action at law.

Here, Podvey asserts a charging lien against the proceeds of the Towers Sale pursuant to N.J.S.A. 2A:13-5. As noted by the Trustee, "[t]he plain language of N.J.S.A. [] 2A:13-5 grants a lien to an attorney for affirmatively pursuing his client's action, cause of action, claim or counterclaim or cross-claim . . . . [r]ather than providing a lien for all services performed[.]" *Indus. Network Sys. v. Armstrong World Indus.*, 54 F.3d 150, 155 (3d Cir. 1995). It is undisputed that Podvey did not commence a proceeding or other legal action on behalf of the Debtor or the relevant LLCs. New Jersey's statutory charging lien is calibrated to protect attorneys who labor in court rather than at the negotiation or drafting table. "[T]he state legislature took pains to list those specific services to which the lien applies." *See Id*. The alleged services provided by Podvey in connection with the Towers Sale are transactional in nature and thus, lie outside the bounds of the statute. Therefore, the Court denies Podvey's motion for partial summary judgment on Count Two of its adversary complaint.

## **CONCLUSION**

The state court judgment is entitled to full faith and credit and precludes challenge of Luwisch's security interest. The First and Second Counts of the Trustee's cross-claims, as well as the First Count of Luwisch's cross-claims, are resolved in favor of defendant Luwisch. Additionally, the Second Count of Podvey's adversary complaint, asserting a charging lien against certain proceeds, is resolved against Podvey.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

*s/*  *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: December 21, 2011