NOT FOR PUBLICATION



FILED
JAMES J. WALDRON, CLERK

JUNE 4, 2012

U.S. BANKRUPTCY COURT
NEWARK, N.J.

BY: s/ Ronnie Plasner, DEPUTY

UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW JERSEY

| | |
|---|---|
| In Re:<br><br>**PHILIP RABINOWITZ,**<br><br>                              Debtor. | Case No.:   10-12538  (DHS)<br><br>Adv. No.:   10-02435  (DHS)<br><br>Judge:   Hon. Donald H. Steckroth |
| **PODVEY MEANOR CATENACCI HILDNER COCOZIELLO & CHATTMAN, P.C.,**<br><br>                              Plaintiff,<br>v.<br><br>**BENJAMIN STANZIALE, JR., et al.,**<br><br>                              Defendants,<br>and<br><br>**HANK LUWISCH,**<br><br>          Defendant-Third Party Plaintiff,<br>v.<br><br>**WHITEHALL DEVELOPMENT, LLC, et al.,**<br><br>          Third-Party Defendants. | **OPINION** |

**APPEARANCES:**

**FORMAN HOLT ELIADES RAVIN & YOUNGMAN LLC**
Harry M. Gutfleish, Esq.
80 Route 4 East, Suite 290
Paramus, New Jersey 07652
*Attorneys for Chapter 7 Trustee Benjamin Stanziale, Jr.*

**WILENTZ, GOLDMAN & SPITZER, P.A.**
David H. Stein, Esq.
90 Woodbridge Center Drive
P.O. Box 10
Woodbridge, New Jersey 07095
*Attorneys for Defendant-Third Party Plaintiff Hank Luwisch*

**THE HONORABLE DONALD H. STECKROTH, BANKRUPTCY JUDGE**

Before the Court is a motion brought by Defendant-Third Party Plaintiff Hank Luwisch ("Luwisch") against chapter 7 Trustee Benjamin Stanziale ("Trustee") to compel an accounting, for turnover of funds, and for allowance and payment of a secured claim. In December 2006, Luwisch and Philip Rabinowitz, the Debtor ("Debtor"), entered into a financing transaction reflected by a loan agreement and a promissory note ("Note") executed in Luwisch's favor (together, the "Agreement"). Pursuant to the Agreement, Luwisch holds a security interest in certain funds currently in the possession of the Trustee. After the Debtor defaulted under the Agreement, Luwisch brought suit in state court and obtained a default judgment against the Debtor. Luwisch now claims an entitlement to the balance of the funds held by the Trustee. The Trustee disputes only Luwisch's calculation of his claim. Specifically, the Trustee argues that post-judgment interest should accrue at the legal rate under state law, rather than the contract rate, and that Luwisch is not entitled to collect post-judgment attorneys' fees. The Trustee also argues that, due to Luwisch's dilatory conduct, the Court should not allow the accrual of interest on Luwisch's claim after December 31, 2010. Luwisch argues that, under section 506(b) of the Bankruptcy Code, the contract interest rate applies post-judgment and he is entitled to attorneys' fees as provided by the terms of the Agreement.

The Court has jurisdiction pursuant to 28 U.S.C. §§ 1334(b), 157(a), and the Standing Order of Reference from the United States District Court for the District of New Jersey dated July 23, 1984. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A), (B), and (E). Venue is proper under 28 U.S.C. § 1409(a). The following shall constitute the Court's findings of fact and conclusions of law as required by Federal Rule of Bankruptcy Procedure 7052.

**STATEMENT OF FACTS**

Pursuant to the Agreement, Luwisch loaned the Debtor $350,000 in return for a security interest in the Debtor's right to receive distributions from his direct and indirect membership interests in various limited liability companies, including Whitehall Towers, LLC ("Towers"). The Note contains a provision for attorneys' fees as follows:

> If suit is brought to collect this Note or any part hereof, Maker expressly agrees to pay all of Payee's reasonable costs and expenses of collection, including reasonable attorneys' fees. Maker also expressly agrees to reimburse the Payee's costs, expenses and charges (including, without limitation, reasonable attorney fees) incurred in connection with the enforcement of this Note.

After the Debtor defaulted under the Note, Luwisch brought suit in the Superior Court of New Jersey. The Agreement sets forth a default interest rate of 18%. On June 16, 2009, the Superior Court entered a default judgment against the Debtor, who acknowledged the debt and

3

chose not to oppose entry of judgment, in the amount of $380,111.21 ("Judgment").[1] The Judgment provides, in relevant part:

> IT IS ORDERED that the terms and conditions of the [Agreement] remain in full force and effect including but not limited to [Debtor's] obligation to transfer certain limited liability company interests to [Luwisch], assign and pledge a beneficial interest in a certain limited liability company to [Luwisch], permit inspection of [Debtor's] books of accounts which reflect fully and accurately all transactions of certain limited liability companies, report on all material occurrences concerning these entities in no event less frequently than quarterly, and respond to inquiries regarding those entities.

On June 3, 2009, during the pendency of the state action, the Debtor and his business partner, Richard Weinstein, sold their membership interest in Towers to Newco Enterprises, LLC ("Newco") for a purchase price of $1.5 million. The purchase price was paid with $300,000 down and the balance of $1.2 million to be paid in equal installments between November 2009 and May 2012. Under the Agreement, Luwisch holds a security interest in the Debtor's portion of the proceeds. Luwisch, however, was not informed of the sale.

The Debtor filed his petition for chapter 7 relief on January 29, 2010. After the Debtor's filing, Luwisch learned of the Towers sale and filed his second amended proof of claim in the amount of $879,047.29. On September 7, 2010, this Court entered an Order directing that all future installments from the Towers sale be paid to the Trustee to be held in a segregated account pending the resolution of the various rights and interests in the proceeds asserted by the Trustee and Luwisch, among others. According to the Trustee, the parties have been litigating issues relating to Luwisch's claim, including the validity of his security interest in the proceeds, since October 2010. The Trustee further asserts that Luwisch's dilatory conduct increased fees and costs while preventing the parties from filing an early summary judgment motion with the Court to resolve questions concerning Luwisch's purported security interest. The Trustee eventually moved for summary judgment against Luwisch who then cross-moved for summary judgment against the Trustee. The Court after argument issued an Opinion that granted the Judgment full faith and credit and validated Luwisch's security interest in the proceeds of the Towers sale.

Currently, the Trustee holds the balance of the sale proceeds, approximately $481,032, in a segregated account. On March 8, 2012, Luwisch filed the instant motion seeking turnover of all proceeds now held by the Trustee. The Trustee filed opposition and the parties were heard shortly thereafter.

---

[1] The amount constitutes 80% of the total award of $474,389.01.

4

## **DISCUSSION**

**I.      Applicable Interest Rate**

The parties disagree over which interest rate should apply to the Judgment.  Luwisch argues that the Bankruptcy Code controls and that under section 506(b), the contract rate set forth in the Agreement applies.  The Trustee argues that, under state law, a judgment creditor is entitled to only the statutory post-judgment interest rate absent express findings by the trial court that equity requires application of a higher rate.  Luwisch counter-argues that he is entitled to the contract rate regardless because the state court ordered that "the terms and conditions of the [Agreement] remain in full force and effect[.]"  This Court agrees.

Generally, a creditor's claim is measured "as of the date of the filing of the petition." *Rushton v. State Bank of S. Utah (In re Gledhill)*, 164 F.3d 1338, 1340 (10th Cir. 1999) (quoting 11 U.S.C. § 502(b)).  Interest, fees, costs, and other charges that accrue prepetition are included in the creditor's proof of claim subject to the provisions of section 502.  *See In re Nunez*, 317 B.R. 666, 670 (Bankr. E.D. Pa. 2004).  "Interest, fees, costs, and charges that accrue after the petition has been filed, or post-petition, are permitted only if authorized under [section] 506(b)." *Id*.  Section 506(b) provides, in relevant part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim[.]

11 U.S.C. § 506(b).

Typically, an oversecured creditor is allowed postpetition interest at the contract rate. *See* COLLIER ON BANKRUPTCY ¶ 506.04[2] (Alan N. Resnick and Henry J. Sommer eds., 16th ed.).  Here, however, Luwisch reduced his claim to judgment prepetition.  Accordingly, the Trustee argues that the merger doctrine prevents a bankruptcy court from looking past the state court judgment to revive contractual provisions that have merged into the Judgment.  *See Youngman v. Fleet Bank, N.A. (In re A&P Diversified Techs. Realty, Inc.)*, 467 F.3d 337, 341 (3d Cir. 2006); *see also Stendardo v. Fed. Nat'l Mortg. Assoc. (In re Stendardo)*, 991 F.2d 1089, 1095 (3d Cir. 1993).  Indeed, authority dictates that a creditor is entitled to the rate "it would have been entitled [to] in the absence of the petition."  *Maimone v. Columbia Sav. Bank (In re Maimone)*, 41 B.R. 979, 980 (Bankr. D.N.J. 1984).

In New Jersey, a judgment creditor is entitled to post-judgment interest until his judgment is satisfied.  *See R. Jennings Mfg. Co., Inc. v. N. Elec. Supply Co., Inc.*, 286 N.J. Super. 413, 416 (App. Div. 1995); *see also Board of Educ. v. Levitt*, 197 N.J. Super. 239, 244-45 (App. Div. 1984) (litigant entitled to post-judgment interest as of right).  Luwisch is a "contract creditor with a judgment" and thus, "is not a contract creditor at all but a judgment creditor subject to [New

Jersey Court Rule 4:42-11(a)]." *R. Jennings*, 286 N.J. Super. at 417. The rule sets forth the interest rate applicable to judgments and provides, in pertinent part:

> Except as otherwise ordered by the court or provided by law, judgments, awards and orders for the payment of money, taxed costs and attorney's fees shall bear simple interest[.]

N.J. Ct. R. 4:42-11(a).

The rule's commentary states that "[i]n special cases . . . and where there are particular equitable reasons for so doing, the court may permit the assessment of post-judgment interest at the contract rate rather than the rule rate." N.J. Ct. R. 4:42-11 cmt. 1.2.1 (citing *R. Jennings*, 286 N.J. Super. 413). "The comment to the rule has been interpreted to permit trial courts the discretion to award a higher rate of interest when such award would be fair and equitable." *Interchange State Bank v. Rinaldi*, 303 N.J. Super. 239, 261 (App. Div. 1997) (internal quotation marks omitted) (citing *Mid-Jersey Nat. Bank v. Fidelity-Mortg.*, 518 F.2d 640 (3d Cir. 1975)). The Trustee argues that, unless the trial court makes specific equitable findings to justify application of a higher rate, the legal rate applies. *See R. Jennings*, 286 N.J. Super. at 418 (the trial court may set a different rate if it "finds particular equitable reasons for doing so."); *see also Marko v. Zurich N. Am. Ins. Co.*, 386 N.J. Super. 527, 531 (App. Div. 2006); *Interchange State Bank*, 303 N.J. Super. at 263-64 (recognizing an equitable component in determining the post-judgment interest rate); *Mid-Jersey Nat. Bank*, 518 F.2d at 646 (remand to district court to "set an appropriate rate . . . in light of equitable considerations and the New Jersey court rule."). The Trustee correctly notes that several of the above cases, including *R. Jennings* and *Interchange State Bank*, were remanded with direction to the trial court to explore the equities of each case to determine the appropriate interest rate. *See R. Jennings*, 286 N.J. Super. at 418 (remand with instruction to "determine whether it would be equitable to allow interest to run . . . at the contract rate . . . ."); *see also Interchange State Bank*, 303 N.J. Super. at 266 (trial court gave the issue only cursory treatment and applied the legal rate; appellate division remanded for the trial court to "expound[] upon the basis for [] [its] conclusion."). Here, the Judgment was entered on default and unaccompanied by an opinion or other findings of fact. Thus, the Trustee argues that the legal rate applies to Luwisch's claim.

Luwisch, relying on *Presque Isle Apartments, L.P. v. Landmark Sav. Assoc.'s*, 112 B.R. 744 (Bankr. W.D. Pa. 1990), argues that the Judgment expressly incorporated the terms of the Agreement into the Judgment and therefore, the state court applied the contract rate. In *Presque*, the creditor obtained a foreclosure judgment against the debtor's property in February 1986. The court found that the legal rate of interest would normally apply post-judgment, absent "clear intent to continue the contract[] rate" in the underlying loan documents. 112 B.R. at 747. The legal rate applied from February 1986 until August 1987 when the parties revived the original mortgage and note by agreement, which stated that "all terms and conditions of the mortgage and note between the parties shall remain in full force and effect." *Id*. The court found such language sufficient to reinstate the terms of the earlier agreement and reapplied the contract rate as of August 1987. *Id*.

6

Luwisch reasons that, because the state court judge used language identical to the agreement in *Presque*, the Judgment incorporates and preserves the terms of the Agreement, thus, entitling him to post-judgment interest at the contract rate and recovery of post-judgment attorneys' fees. Moreover, Luwisch notes that New Jersey courts have awarded a higher rate of interest based on equitable considerations also present in the instant matter. *See Interchange State Bank*, 303 N.J. Super. at 265 (endorsing section 506(b) and stating that "[a]ny oversecured judgment creditor . . . should, generally, be awarded post-judgment interest at the contract rate."); *Shadow Lawn Sav. and Loan Ass'n v. Palmarozza*, 190 N.J. Super. 314, 318 (App. Div. 1983) ("When the legal rate is less than the contract rate it may be equitable to [apply] . . . the contract rate to avoid prejudice to a mortgagee caused by delays in satisfying the judgment."); *Mid-Jersey*, 518 F.2d at 645-46 (same).

In its March 28, 2012 Opinion barring the Debtor's discharge ("Discharge Opinion"), this Court recognized that the Debtor's evasive, and occasionally uncooperative, behavior prevented Luwisch from recovering his collateral.[2] While the facts set forth in the Discharge Opinion provide sufficient equitable grounds to award interest at the contract rate under section 506(b), the Court is bound by the terms of the Judgment. The Judgment was entered on default, with the consent of the Debtor, and was not challenged or appealed. Consequently, the Court accepts the plain language of the Judgment, language that gives the provisions of the Agreement, including the interest rate, continuing effect. Under these facts, the doctrine of merger simply does not apply. Further, New Jersey Court Rule 4:42-11(a) provides that the legal rate applies, "[e]xcept as otherwise *ordered* by the court . . . ." (emphasis added). Case law does not conclusively establish that a court's failure to make particular findings or expound upon the equities of a case will render an order or judgment ineffective to the extent it imposes a post-judgment interest rate in excess of the legal rate. Here, the state court recognized that Luwisch held a continuing security interest in certain collateral. At the time of Judgment, the state court could not determine whether Luwisch was over or undersecured as the collateral had yet to generate value. Presumably, the state court order reaffirmed the terms and conditions set forth in the Agreement so as not to deny Luwisch the benefit of his bargain. The result is consistent with the view espoused by the Appellate Division in *Interchange State Bank*, that "[a]ny oversecured judgment creditor . . . should, generally, be awarded post-judgment interest at the contract rate." 303 N.J. Super. at 265. Thus, the contract rate applies under the facts of this case.

## II.  Post-Judgment Attorneys' Fees

Luwisch also claims that, under the terms of the Agreement, he is entitled to reasonable attorneys' fees for his efforts in enforcing his Judgment pursuant to section 506(b) of the Bankruptcy Code. The Trustee argues that the Agreement does not provide for post-judgment attorneys' fees as required under state law and nevertheless, the provision merged into the state

---

[2] *Luwisch v. Rabinowitz (In re Rabinowitz)*, 2012 Bankr. Lexis 1336 (Bankr. D.N.J. Mar. 28, 2012).

court Judgment. Thus, Luwisch's claim for attorneys' fees must fail. *See Hatch v. T & L Assoc.*, 319 N.J. Super. 644, 648 (App. Div. 1999) ("[w]e do not accept the proposition that a borrower understands that the typical note provision for the cost of collection imposes an obligation for post-judgment counsel fees."); *see also Youngman*, 467 F.3d at 341-42. Luwisch again counter-argues that the attorneys' fees provision in the Note is enforceable as section 506(b) preempts contrary state law and that, in any event, the terms of the Agreement survived Judgment. *See First Western Bank & Trust v. Drewes (In re Schriock Constr., Inc.)*, 104 F.3d 200, 203 (8th Cir. 1997).

An allowed secured claim may include the principal amount due "as well as any interest and fees which the creditor has a right to [] as of the time the bankruptcy petition is filed." *Nunez*, 317 B.R. at 670. Section 506(b) allows a secured creditor additional recovery, but only to the extent of its "security cushion." *In re Plymouth House Health Care Ctr.*, 2005 Bankr. Lexis 1992, at *16 (Bankr. E.D. Pa. Mar. 15, 2005) (quoting *United Sav. Ass'n v. Timbers of Inwood Forest*, 484 U.S. 365, 372-73 (1988)). Section 506(b) provides, in pertinent part:

> To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim . . . any reasonable fees, costs, or charges provided for under the agreement or State statute under which such claim arose.

11 U.S.C. § 506(b).

This Court has previously ruled that, "for [interest, fees, costs, and penalties] to be included as part of an allowed secured claim under [section 506(b)], a creditor must be oversecured and the charges must be: (1) provided for in an agreement under which the claim arose (i.e., consensual), (2) reasonable and (3) permitted under the law." *In re Wesley*, 455 B.R. 383, 386 (Bankr. D.N.J. 2011) (quoting *Nunez*, 317 B.R. at 668); *see In re Nixon*, 2009 U.S. Dist. Lexis 54199, at *15 (E.D. Pa. June 25, 2009) ("[f]or such fees and costs to be included as part of an allowed secured claim under [section] 506(b) . . . the attorneys' fees sought must be: . . . permitted under applicable non-bankruptcy law."). Reasonableness is determined exclusively under federal law. *See In re Ryker (Ryker III)*, 2007 U.S. App. Lexis 17993, at *11 (3d Cir. July 26, 2007). Courts have found that reasonableness has two facets: "(1) the itemized fees themselves must be reasonable, and (2) the creditor's actions must be reasonable." *In re West Elec., Inc.*, 158 B.R. 37, 40 (Bankr. D.N.J. 1993). Further, a court must determine whether a creditor took actions that other similarly situated creditors would have taken and "whether such actions and fees were outside the range so as to be deemed unreasonable." *Ryker v. Current (In re Ryker II)*, 338 B.R. 642, 651 (D.N.J. 2006) (quoting *West Elec.*, 158 B.R. at 40).

Section 506(b) is to be read in conjunction with section 502. *Wesley*, 455 B.R. at 387; *see Royal v. Welzel (In re Welzel)*, 275 F.3d 1308, 1317 (11th Cir. 2001) (section 506(b) governs a claim's status as secured or unsecured while section 502 governs whether a claim is allowed or

8

disallowed). Importantly, "[s]ection 502(b)(1) disallows claims that are unenforceable against debtors under applicable law." *In re Nixon*, 400 B.R. 27, 38 (Bankr. E.D. Pa. 2008). Relying on the Superior Court's decision in *Hatch*, the Trustee argues that state law applies and thus Luwisch is not permitted to collect attorneys' fees under section 506(b) as the typical fee provision is not read to include a right to post-judgment fees under state law. 319 N.J. Super. at 648 (such obligation "would have to be clearly and specifically provided for"). In this case, the state court was doubtlessly aware of the "American rule" whereby litigants typically pay their own legal fees and yet chose to incorporate the Agreement into its Judgment, granting its full terms continuing effect. Nevertheless, the Trustee argues, the attorneys' fees provision merged into the Judgment thereby precluding Luwisch from asserting an entitlement under the fee provision. Under the merger doctrine, an agreement "and its concomitant attorneys' fees provision cease[] to exist when [] judgment [is] entered." *Youngman*, 467 F.3d at 343. In such situations, the party claiming fees is "no longer the beneficiary of an agreement under which a claim for attorneys' fees arose . . . ." *Id.*

In *Stendardo*, the Third Circuit recognized an exception to the merger doctrine. Under *Stendardo*, parties may "rely upon a particular provision post-judgment if the mortgage clearly evidences their intent to preserve the effectiveness of that provision post-judgment." 991 F.2d at 1095. Here, unlike *Stendardo* and *Youngman*, the Judgment specifically incorporated the terms of the Agreement. As discussed above, it is the Court's conclusion that the Judgment means what it says. The merger doctrine does not appear to control the outcome here. Accordingly, the Agreement did not merge and the parties remain bound by their bargain as expressly ordered by the state court. Here, the fee provision in the Note provides for attorneys' fees and expenses of collection and enforcement. Therefore, both the Agreement and the Judgment entitle Luwisch to collect fees for pursuing satisfaction of the debt owed. In addition, the Court finds that the fees charged were reasonable under the circumstances. The facts of the instant case are peculiar and have not been squarely addressed by authority, but the Court finds that a ruling to the contrary would be inconsistent with the Judgment, the Agreement, and would prejudice Luwisch for the diligent pursuit of his claim prepetition. Moreover, before the Court is Luwisch's motion for, among other things, allowance and payment of his *secured* claim. Such a claim may not exceed the value of the relevant collateral, in this case, the remaining proceeds from the Towers sale. *See* COLLIER ON BANKRUPTCY ¶ 506.04[1] ("postpetition interest, fees, costs or charges may be added as part of the allowed amount of an allowed secured claim to the extent that the claim is oversecured.").

According to calculations Luwisch provided to the Court, his secured claim is purportedly composed of (i) the Judgment in the amount of $380,111.21; (ii) post-judgment interest at the contract rate in the amount of $185,388.05 as of February 29, 2012; and (iii) attorneys' fees in the amount of $226,430.47, as of February 14, 2012, for a total claim in the amount of $791,929.73. (Cert. of David H. Stein, Ex. E) The amount of the Judgment alone, plus interest, far exceeds the proceeds of Luwisch's collateral. His secured claim is necessarily limited to the value of his collateral. *See* 11 U.S.C. § 506(a); *see also In re Montgomery Ward, LLC*, 634 F.3d 732, 740 (3d Cir. 2011). Thus, Luwisch is entitled to an allowed secured claim for the full balance of the proceeds now held by the Trustee and payment of same.

As a final note, the Court denies the Trustee's request to toll the accrual of post-judgment interest after December 31, 2010. After review of the certifications of counsel submitted in connection with this motion, the Court finds no evidence that Luwisch or his attorneys engaged in dilatory conduct or otherwise overworked the case.

## **CONCLUSION**

The Court finds that the Judgment incorporates the Agreement and the terms of the Agreement continue to control. Luwisch's secured claim is limited to the value of his collateral, here liquidated into the proceeds held by the Trustee. The motion is hereby granted.

An Order in Conformance with this Opinion has been entered by the Court and is attached hereto.

*s/*  *Donald H. Steckroth*

DONALD H. STECKROTH
UNITED STATES BANKRUPTCY JUDGE

Dated: June 4, 2012